No. 13,820.

INDUSTRIAL COMMISSION ET AL. *v.* BARTON.

(52 P. [2d] 670)

Decided December 9, 1935.

Mr. PAUL P. PROSSER, Attorney General, Mr. M. S. GINSBERG, Assistant, Mr. WILLIAM E. HUTTON, Mr. J. P. NORDLUND, for plaintiffs in error.

Mr. O. A. JOHNSON, for defendant in error.

*In Department.*

MR. JUSTICE YOUNG delivered the opinion of the court.

THE plaintiffs in error will be designated in this opinion as the commission and the company, and the defendant in error as claimant.

Claimant, a painter, was employed by the company to stain, varnish and shellac baseboards in the girls' dormitory under construction at the State University in

Boulder, Colorado. The concrete floor had been laid and the rooms were littered with shavings, small pieces from the sawed ends of lumber, and quarter-round finishing material. In doing his work it was necessary for claimant to be on his knees, or knee; particularly the left knee. Sometime during the first of August, 1934, and after he had been employed for approximately ten or eleven weeks, claimant's left knee began to pain him and to swell, and on the 11th of August he reported to the foreman that he had bruised his knee, which fact appears from the report of the company filed with the commission. The evidence discloses that on Thursday, preceding Monday the 13th of August, the claimant had complained at a union meeting to members of his union about trouble with his knee. On the 13th of August the condition of the knee was such that he could not continue his work and he was discharged by the foreman. Shortly thereafter he went to a doctor who diagnosed the condition from which he was suffering as housemaid's knee.

This doctor testified that claimant told him of the character of the work he was doing, but gave him no history of an injury to the knee or disability other than such as resulted from kneeling in the course of his employment; that from the history given it was his opinion that the cause of the condition was from the pressure on the knee incident to the character of the work, and the position claimant was required to assume in doing it. September 24th, the claimant filed with the commission a "notice and claim for compensation" in which under the heading, "Describe briefly how the accident occurred," he stated, "Bruised by striking sawed ends of quarter-round and sawed ends of lumber on floor on my knees." At the hearing before the referee in answer to the question, "Tell us what you were doing on August 10th and just how your accident happened," the claimant answered: "I have been doing, all spring and summer, just base-board work, nothing but finishing the base-boards, shellacking, staining and rubbing them down. There are

384 rooms there, I think, and I was there about eleven weeks before this happened." He then was asked, "This work required you to be on your knees most of the time, did it?" and he answered, "Yes, sir." The foregoing is all the testimony that appears in the record of the first hearing as to the cause of claimant's condition.

The referee after the first hearing made the following finding, under date of October 10, 1934: "Claimant was employed by above named respondent employer as a painter. For a period of three months he had been engaged in staining, shellacking and varnishing base boards, which required him to work on his knees. On August 1, 1934, he became conscious of a condition which caused him to leave his employment on August 13, 1934. This condition was diagnosed by the attending physician as 'housemaid's knee'. The left knee was so affected. Claimant was able to return to work on August 23, 1934, and whether or not he has suffered any permanent disability was not shown. The Referee finds from the evidence that claimant's condition is not the result of an accidental injury within the meaning of the Workmen's Compensation Act; that said condition is in the nature of an occupational disease and, therefore, not compensable under the law." On this finding compensation was denied.

The claimant was not represented by an attorney at the first hearing and made no application to have the finding of the referee reviewed until the time limited by statute for such application had passed. He later procured the services of an attorney who filed another claim for him setting forth how the accident was caused in substantially the same words as in the original claim filed by the claimant. Application then was made to the commission to reopen the case and grant a further hearing, and on February 14, 1935, the commission reopened the case on its own motion for the purpose of determining whether or not there had been any error, mistake or change in condition.

On the second hearing the claimant testified that during the week prior to the 13th of August he kneeled down on a sawed piece of quarter-round with his left knee "and rolled on it;" that he looked at his knee immediately but "that it did not show much then." He stated that his knee began to swell from then on. Prior to this hearing he had consulted another surgeon who had operated on his knee. He had told this surgeon of bruising the knee on the piece of quarter-round and on this history of the case the surgeon gave it as his opinion that the condition of housemaid's knee had been caused by the injury sustained in rolling on the piece of quarter-round. The surgeon further testified that housemaid's knee could be caused from an acute injury or from long continued pressure on the knee from kneeling. That at the time he saw the claimant he could not determine from his examination whether the condition was the result of slipping on the block or from the long continued pressure in the course of his work. At the close of this hearing the commission affirmed the referee's award as the final award of the commission.

On trial in the district court, the court found the issues joined in favor of the claimant, set aside the finding of the commission, remanded the case and ordered the commission to enter its award in accordance with the findings of the court granting and sustaining the claimant's claim for compensation, and further ordered that it find and determine the amount and extent of the compensation to which claimant was entitled, holding such further hearings as might be necessary.

We are of the opinion that the foregoing presents merely a case of conflicting evidence. On the two hearings there was competent testimony before the commission that the claimant sustained a bruise to his knee by kneeling on, and slipping off, a sawed-off end of quarter-round. Unquestionably this would constitute an accident. There is medical testimony that the disease known as housemaid's knee may be caused by an acute injury

or bruise on the knee. From the whole record it appears that claimant was engaged in work over a period of ten or eleven weeks that required him to be much on his left knee, and there is competent medical testimony that such long continued pressure on the knee is a common cause of housemaid's knee.

■ Where an existing condition may result from one of two causes shown in the evidence, it is the province of the commission, as the fact-finding body, to determine which of these two causes produced the result of which complaint is made. Such determination is the determination of a fact. The commission in adopting and making its own the findings of the referee, that "claimant's condition is not the result of an accidental injury within the meaning of the Workmen's Compensation Act; that said condition is in the nature of an occupational disease," determined by necessary inference that the condition from which claimant was suffering was not caused by accident, that is, his slipping on the block, but was caused by the pressure on his knee incident to the character of the work in which he was engaged. There being evidence to support the finding it was binding upon the district court, and it was error for the court to set aside such finding and order an award of compensation.

The judgment is reversed.

MR. CHIEF JUSTICE BUTLER and MR. JUSTICE BURKE concur.